## Dennis Beach *et al.*

### *v.*

## George C. Bestor.

1. CREDITORS' BILL — *to reach trust funds — interpretation of a particular assignment for the benefit of creditors.* M. brought suit against a railroad company upon a certain claim, and in February, 1857, pending the action, assigned it to P., who agreed to prosecute it to a recovery, and among other things apply the proceeds to the payment of certain debts against M., among which was one owing to one Bestor. In May, 1857, Bestor reduced his claim to judgment; and in October, 1858, judgment was rendered upon M.'s demand in his favor, and by another arrangement with P., in November following, M. assigned this judgment absolutely to P. & B., upon what they claimed to be a full and fair consideration, but without Bestor's consent, which judgment was subsequently secured by the deposit of funds for its payment, through the action of certain other creditors of the company. Bestor now brings suit as a judgment creditor of M., to compel satisfaction of his claim out of this fund, by reason of the first assignment. *Held,* that the claim of Bestor was embraced in the first assignment, which provided for the payment of such indebtedness as should be found owing from M. to the persons therein named, by reason of work done for, or money loaned to, him; Bestor having loaned him certain negotiable securities upon which to raise money, and with which he procured it, which was equivalent to a money loan.

2. *When bill can be filed before execution.* And in such case it was not necessary to have execution returned *nulla bona,* before Bestor could ask the aid of a court of equity to enforce the satisfaction of his judgment against this fund.

3. FORMER DECISIONS — The cases of *Miller* v. *Davidson,* 3 Gilm. 518; *Greenway* v. *Thomas,* 14 Ill. 271, and *Weightman* v. *Hatch,* 17 id. 281, cited and referred to in support of this principle.

4. The proceeds arising out of this judgment having been expressly appropriated to the payment of Bestor's debt with others, and so received by P., with the agreement that they should be so applied, Bestor is entitled to have his judgment satisfied out of this fund.

342 BEACH *et al. v.* BESTOR. · [Sept. T.,

Opinion of the Court.

5. ·B., having acted jointly with P. in the purchase of M.'s judgment, is chargeable with the same notice that P. had, which was, that he was dealing with a trust fund, and they must satisfy all legal claims upon such fund· growing out of the first assignment to P., as their purchase in no wise affected this trust.

6. It must be presumed that Bestor had notice of the first assignment to P., and relied upon it for the payment of his claim ; the proof showing that M. had furnished him with a copy of it, and that thereafter he took no further steps to collect his debt, until the commencement of this proceeding, a period of about seven years.

7. Nor can he be said to have been guilty of such *laches,* in this delay to enforce payment of his judgment against this fund, as will warrant the presumption that he had abandoned it, the fund having been continually in litigation from the time of assignment until about the time of this proceeding to enforce his claim.

8. The filing of the assignment of the judgment to P. & B., although absolute on its face, did not affect the rights of Bestor, notwithstanding it was notice to him.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in chancery, filed in the court below by the defendant in error, as a judgment creditor of one Richard P. Morgan, against the plaintiffs in error, Dennis Beach, Peter W. Peckham and Ezra M. Prince, to enforce the satisfaction of his judgment out of certain funds in the hands of plaintiffs in error, alleged to have been received by them in trust for the payment of this, together with other claims, by reason of an assignment made by Morgan to Peckham.

The facts are fully stated in the opinion.

Messrs. ARRINGTON & DENT, for the plaintiffs in error.

Mr. W. T. BURGESS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, that George C. Bestor recovered a judgment in the Peoria Circuit Court, at the May Term, 1857, against Richard P. Morgan on a promissory note for $1,664. The note recites that it was given "for two second mortgage bonds of the

Peoria and Oquawka Railroad company." It appears that Morgan held a claim on the Peoria and Oquawka Railroad company, upon which he had brought suit in the United States Circuit Court; that, pending the action, he assigned the claim to Peter W. Peckham, who agreed to prosecute it to a recovery and at the same time transferred to him various claims. Peckham agreed that out of the proceeds he would pay a portion to Morgan, specifying the amount, and would pay a number of persons having debts against Morgan, among whom Bestor is named. This agreement bears date the 6th of February, 1857. The suit against the railroad company resulted, after several trials, in a judgment in favor of Morgan for $50,000, on the 28th of October, 1858.

On the 11th of November, 1858, a new arrangement was entered into between Morgan and Peckham, when the former assigned this judgment to Dennis Beach and Peckham. They at the time gave their notes to Morgan for a portion of the consideration, and they claim that prior and existing indebtedness from Morgan to them constituted the remainder of a full and fair consideration for its purchase. It does not appear that Bestor consented to this sale of the judgment; this assignment was placed on the records of the court in which the judgment was recovered. Subsequently a bill was filed in the McLean Circuit Court by Beach and Peckham against the railroad company and Cruger, Sekor & Co., for the purpose of reaching funds for the payment of the judgment. In September, 1860, a decree was rendered by that court requiring Cruger, Sekor & Co. to pay the money due on the judgment, and making the decree a lien on a part of the railroad. Orme was made a receiver, but Prince subsequently succeeded him as receiver by appointment of the court.

Afterward, Beach filed a bill against the Logansport, Peoria and Burlington Railroad company, formerly the Peoria and Oquawka Railroad company, to reach funds for the satisfaction of this judgment and decree; and there was paid by the company to Prince $3,657.35 thereon. Osborne & Perkins, who held a junior lien to the judgment, recovered by Morgan

against the railroad company, filed a bill of interpleader in the Supreme Court of New York, against divers persons, including Beach and Peckham, and in January 1864, a decree was rendered limiting Osborne & Perkins' liability to satisfy the decree of the 11th September, 1860, to the sum of $59,454.14, requiring them to pay to Beach and Peckham, $12,454.14, and to deposit in the United States Trust company, in New York city, the remaining $47,000, to the credit of Prince, as receiver, and required this latter sum to be invested in United States 5-20 coupon bonds, to be drawn and delivered to the receiver or his successor in office, or order, upon an order of the Circuit Court of Macon county, Illinois, which orders were only to be made after ten days' notice to several persons who were the attorneys of Beach and Peckham. Osborne & Perkins performed the decree, by paying the money to the trust company as required, and put into the hands of Isaac P. Martin, of New York city, $10,000, to abide the result of a litigation between Beach and Peckham, which is still pending.

Bestor claims that he is entitled to have his judgment satisfied out of these funds, by reason of a superior equitable lien on the fund, because of the assignment of the 6th of February, 1857, which designated him as one of the creditors, who should be paid out of the claim from which this fund has arisen. He insists, that his equity is superior to that of Beach and Peckham, under their purchase of the judgment on the 11th of November, 1858. Plaintiffs in error resist this claim on several grounds: First, that plaintiff in error did not sue out an execution on his judgment until 1864, and then without reviving his judgment, and is not therefore, in a position to claim equitable relief; secondly, that, Morgan having sold the judgment by an assignment absolute on its face, on the 11th of November, 1858, and that plaintiff in error having notice of the assignment, and having acquiesced in it without objection until the commencement of this suit, to the October Term, 1864, of the Cook Circuit Court, he lost all benefit of any lien he may have acquired under the first assignment. Also, that this claim was

not embraced in the first assignment, as it was neither for labor performed on the railroad, nor for money loaned.

We shall examine the last objection first. The language of the assignment is, that Peckham would pay " all indebtedness, if any, that may be found to have been due, owing or payable from the party of the first part " to the several persons named, defendant in error being of the number, " by reason of any work done for, or money loaned to the party of the first part, previous to the first day of September, A. D. 1856." The note states that it was given for two second mortgage bonds upon the railroad; and the evidence shows that Morgan desired to raise money, and defendant in error, being unable to accommodate him, let him have the bonds upon which to procure it. That Morgan did raise $1,200 on these bonds. We can see no reason why the claim of defendant in error was not embraced in the assignment. It is true, defendant in error did not directly loan the money, but loaned him the bonds with which it was obtained. It was virtually a loan of money, as it was a loan of negotiable securities upon which to procure the money. It was not for the sale of property, or merchantable commodities, but a loan of securities exchanged in market for money. We are, therefore, of the opinion that there is no force in this objection.

Had the judgment of defendant become dormant, so as to lose its lien in equity upon this fund, from which he could alone enforce satisfaction by bill in equity ? At law, a failure to sue out an execution within twelve months after the recovery of a judgment, operates to destroy the lien on real estate. And the judgment creates no lien on the personal property of the defendant. That is only produced by suing out execution and placing it in the hands of a proper officer. And at the common law, if the plaintiff in the judgment neglects to sue out execution within one year, a legal presumption is raised that the judgment has been paid, and a *scire facias* is required to be sued out to afford the defendant an opportunity to show its satisfaction. But, failing to do so, an execution will be awarded, that plaintiff may have satisfaction of his judgment.

As a general rule, a creditor must reduce his demand to judgment and have execution returned *nulla bona* before he can call upon a court of equity to aid him in obtaining satisfaction. To this rule there are exceptions, and of these is the right to file a bill without first suing out execution, to remove a fraudulent conveyance, and another is, to reach trust property of the judgment debtor held for the benefit of creditors. *Miller* v. *Davidson*, 3 Gilm. 518; *Greenway* v. *Thomas*, 14 Ill. 271; *Weightman* v. *Hatch*, 17 id. 281. In the first of these cases, it was held that courts of equity jurisdiction in all cases of trust, are abundantly able to inquire, of themselves, whether the party claiming to be *cestui que trust* be so or not; and that, if it is established that the person holding the property is a trustee for the creditors, then a complainant, if he be one of them, thus shows himself to be a *cestui que trust*, and establishes his right to invoke the aid of a court of equity to prevent the trustee from abusing the trust.

The principle announced in that case establishes the jurisdiction of the court in this, as in that it was held that an execution returned "no property found" was not necessary before such a fund could be reached on bill in equity. In this case, the fund was expressly appropriated to pay this debt, and was received by Peckham with the agreement that he would so apply it; and when he and Beach purchased the judgment of Morgan, Peckham knew that he was dealing with a trust fund, and, as he and Beach acted jointly in purchasing the judgment, the latter must be held to be charged with the same notice as Peckham had. That purchase, then, did not destroy the character of the trust, and the fund is still held for the benefit of Beach and Peckham; and they are bound to satisfy all legal and binding claims upon the fund, growing out of the former assignment to Peckham.

It is, however, urged, that defendant in error had no notice of the assignment to Peckham, and never accepted of the provision until after the judgment was transferred to Beach and Peckham; and that he acquired no lien upon the fund, did not rely upon it, and has sustained no injury by the sale of

the judgment. Cruger testifies, that defendant in error handed him a copy of the agreement by which Morgan assigned the claim to Peckham, and which provided for the payment of his claim with others; that this copy was sent by Morgan to defendant in error, to secure him for moneys he had advanced to Morgan, and that this copy was made for the use of the attorneys in the defense of the bill filed in the McLean Circuit Court; that defendant in error showed· witness the writing in the summer or fall of 1857, who read it and the copy. George L. Bestor states, that he, some time in 1857, in the office of defendant in error, made this copy for Cruger, from what he supposed to be the original agreement between Morgan and Peckham. This would seem to fully establish the fact that defendant in error had notice of the first agreement before it was destroyed, and the other entered into on the 11th of November, 1858.

As the assignment was for the benefit of defendant in error, with others, the presumption might be fairly indulged that he had accepted it. Such an inference may be indulged, when we see that he took no further steps to collect his debt, until about seven years after. And then he sues out an execution, no doubt, to lay the foundation for the commencement of this proceeding, to subject this fund to the payment of his judgment. He does not seem to have looked to any other fund for payment, nor to have sought its enforcement in any other mode. We therefore think it may be reasonably inferred, that he not only had notice of the assignment, but that he relied upon it for payment.

It is also urged, that, owing to his great delay in commencing proceedings to enforce his claim against this fund, we should presume that he had abandoned the fund. This is sufficiently answered by the fact that this fund was continually in litigation from the time the assignment was made until about the time this suit was commenced. We do not see that more prompt action would have availed defendant in error. And we do not discover that the filing of this last assignment in the United States Circuit Court, although it was absolute

on its face, and may have been notice to defendant in error, could affect his rights, or that he has been guilty of such laches as estops him from asserting his claim. Had the rights of innocent purchasers intervened, then a very different question would have been presented. From a careful examination of the record in this case, we do not find any error for which the decree of the Circuit Court should be reversed, and it is therefore affirmed.

*Decree affirmed.*